# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Mario Antonio Mitchell,<br><br>Debtor(s). | C/A No. 15-05656-HB<br><br>Chapter 7<br><br>**ORDER DENYING MOTION FOR RELIEF FROM STAY** |

**THIS MATTER** is before the Court for consideration of the Motion filed by Henry Lazcano and Guaray "Mike" Gupta ("Movants").[1] Movants seek relief from the automatic stay of 11 U.S.C. § 362(a)[2] to continue a lawsuit pending in Virginia state court for breach of contract and resulting damages against Debtor Mario Antonio Mitchell. If successful in establishing a debt in that action, Movants also seek relief to submit any judgment for payment to the Virginia Real Estate Transaction Recovery Fund, Va. Code Ann. § § 54.1-2114 and 2116 (the "Recovery Fund"), under the Virginia Real Estate Transaction Recovery Act, Va. Code Ann. § 54.1-2112 *et seq.* (the "Recovery Act").

For the reasons set forth below, the Court finds that Movants failed to establish cause for relief pursuant to § 362(d). Movants did not demonstrate that they are possible claimants under the Recovery Act and failed to establish grounds for the continued pursuit of a breach of contract case against Mitchell in the Virginia state court.

The Court enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1), made applicable to this contested matter pursuant to Fed. R. Bankr. P. 7052 and 9014.

---

[1] ECF No. 7, filed Nov. 13, 2015.
[2] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, shall be by section number only.

## FACTS

1. Mitchell was present at all hearings on this matter and testified under oath. Mitchell is currently a real estate professional in North and South Carolina and lives in Ballantyne, North Carolina.

2. Movants are residents of Virginia and did not attend any hearing or provide testimony.

3. On February 27, 2012, Movants and Mitchell entered into an agreement titled "Home Investing Partnership Agreement" (the "Partnership Agreement") and formed MGL Consulting, LLC (the "LLC"). The LLC's business was to purchase distressed properties, renovate the properties, and sell them for a profit.

4. The Partnership Agreement provided that each of the partners had an equal voice in the management of the LLC and would be distributed an equal proportion of any net profits or losses of the LLC. According to the Partnership Agreement, Movants contributed $15,000 each in initial capital for the LLC and Mitchell was responsible for financing the note on each home purchased by the LLC.

5. Mitchell testified that although Movants claim they actually provided $50,000 each as initial capital, that amount was never paid and they each contributed only $15,000.

6. The LLC only purchased and resold one property in Virginia before the parties terminated their business relationship.

7. Mitchell testified that prior to the closing of the sale of that property, Movant Lazcano requested a HUD-1 Settlement Statement.[3] Mitchell provided Movants a preliminary HUD-1 that differed from the final HUD-1 generated at closing because it did not include loans. Mitchell explained that in his experience, HUD-1s may be prepared multiple times during a real estate transaction and the final HUD-1 is rarely the same as a preliminary HUD-1.

8. Mitchell testified that the property sold for a loss because the sale price did not cover the purchase price and renovation costs. Despite this, Mitchell stated that he wired $35,000 to Lazcano's account three months after the sale to cover Movants' $15,000 initial capital contributions as well as $5,000 for a vehicle Movants claimed was purchased with their contributions.

9. After the sale of the property, on November 15, 2013, Movants submitted a complaint against Mitchell to the Virginia Real Estate Board. As a result, on January 22, 2015, the Board fined Mitchell $2,250 and revoked his real estate license for improper, fraudulent, or dishonest conduct and for failing to update his address of record in violation of Board regulations.

10. Mitchell testified that he failed to respond to the allegations of misconduct because he neglected to provide the Board with his North Carolina forwarding address as required by the Board's regulations. Consequently, he was unaware of the complaint for misconduct brought against him and the Board's investigation, and failed to contest or otherwise participate in the proceeding.

---

[3] A HUD-1 Settlement Statement is a standard form that itemizes all charges and credits to the buyer and to the seller in a real estate transaction. *See* Consumer Financial Protection Bureau, *What is a HUD-1 Settlement Statement?*, http://www.consumerfinance.gov/askcfpb/178/what-is-a-HUD-1-settlement-statement.html.

11. Thereafter, as a result of the Board's decision in Virginia, the North Carolina Real Estate Commission issued a conditional two-month suspension of Mitchell's North Carolina license, effective July 1, 2016, should he fail to comply with certain requirements imposed by the Commission. A Consent Order entered between Mitchell and the Commission stated that the basis for the disciplinary action in Virginia was "a business deal in which [Mitchell] was a principal, and [Mitchell's] failure to update his personal information with the agency."

12. No action has been taken against Mitchell by the South Carolina Real Estate Commission.

13. On March 6, 2015, Movants initiated an action against Mitchell in the state Circuit Court of Prince William County, Virginia, captioned *Henry Lazcano and Guaray "Mike" Gupta v. Mario A. Mitchell*, C/A No. CL 15001645.

14. Movants' initial complaint alleged Mitchell breached the Partnership Agreement and sought a finding that Mitchell engaged in improper and dishonest conduct within the meaning of the Recovery Act. Movants asserted Mitchell was indebted to them in the amount of $82,862.20.

15. Mitchell, through counsel in Virginia, responded by submitting a demurrer to the complaint. The demurrer argued, in part, that Movants' request for a finding of "improper and dishonest conduct" within the meaning of the Recovery Act was inappropriate because they did not initiate a case pursuant to Va. Code Ann. § 54.1-2114 and comply with other requirements of the statute, and the statute is penal and does not create a private right of action.

16. On June 5, 2015, the Virginia court entered an order sustaining Mitchell's demurrer to Movants' complaint "for reasons stated from the bench" that are not in this record. As a result, the Virginia court granted Movants leave to amend their complaint.

17. Thereafter, on June 25, 2015, Movants filed an amended complaint that removed the allegation and request for a finding that Mitchell engaged in improper and dishonest conduct within the meaning of the Recovery Act.

18. The amended complaint alleges Movants provided additional capital contributions to the LLC beyond their initial contributions, the LLC purchased a property in Virginia on September 5, 2012, for $70,100.00, which was paid for in cash by the LLC, and the LLC sold the property to a third party purchaser on August 1, 2013, for $170,500.00. It further alleges that Mitchell breached the Partnership Agreement of that LLC by depositing capital contributions from Movants into a personal bank account rather than a business account, encumbering the Virginia property, incurring obligations, and withdrawing capital funds all without the express written consent of Movants, and failing to account for the proceeds from the sale of the property.

19. No causes of action other than breach of contract are pursued in the amended complaint. The amended complaint asserts that as a result of Mitchell's violations and breaches of the Partnership Agreement, Movants suffered damages in that they did not receive their proper portions of the net profits pursuant to the Partnership Agreement and alleges the amount of damages owed to them is not less than $150,000.

20. There is no evidence indicating that the litigation in Virginia progressed beyond the initial pleadings stage.

21. Mitchell filed a voluntary petition for Chapter 7 relief on October 23, 2015, staying the lawsuit in Virginia. Mitchell's amended schedules list a disputed, unsecured, nonpriority business debt in the amount of $100,000 owed to Movants. Mitchell testified that he listed Movants' claim as $100,000 because that is what he believed Movants assert they are owed.

22. The Notice of Bankruptcy instructed creditors not to file claims until further notice and no claims have been filed. Movants received due notice of the bankruptcy.

23. The deadline for filing a complaint pursuant to §§ 523 and 727 has passed. Movants have taken no action to challenge Mitchell's discharge or the dischargeability of any debt and the Chapter 7 trustee has filed a report of no distribution.

24. Movants ask the Court for relief to continue the litigation in Virginia to establish the pre-petition debt in the breach of contract lawsuit. Movants' counsel clarified at the hearing that Movants seek relief to pursue the cause of action set forth in the amended complaint only. Thereafter, if successful, Movants request relief to submit any judgment to the Recovery Fund for payment.

### DISCUSSION AND CONCLUSIONS OF LAW

The requested relief has two distinct parts: (1) relief to continue the lawsuit in the Virginia state court to complete the breach of contract action; and then (2) relief to submit any judgment to the Recovery Fund for payment. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Upon the filing of a bankruptcy petition, § 362(a) automatically imposes a stay of the commencement or continuation of actions against the debtor or to collect debts against the debtor, and a stay of actions to enforce a pre-petition judgment against the debtor. Section 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C. § 362(d)(1).

"The party requesting relief under § 362(d)(1) has the initial burden of proving that cause exists for relief from the automatic stay, but upon such a showing, the burden shifts to the debtor to demonstrate a lack of cause and the existence of adequate protection." *In re Toomer*, C/A No. 10-07273-JW, 2011 WL 8899488, at *2 (Bankr. D.S.C. Oct. 5, 2011) (citing *In re Davis*, C/A No. 10–2249–JW, 2010 WL 5173187, at *2 (Bankr. D.S.C. Oct.12, 2010)). "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Abrantes Const. Corp.*, 132 B.R. 234, 237 (N.D.N.Y. 1991) (quoting *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990)).

A decision to lift the automatic stay is within the discretion of the bankruptcy judge. *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992), *as amended* (May 27, 1992). Because the Code does not define "cause," "courts should look at the case-specific facts and the totality of the circumstances in order to determine whether sufficient cause exists to grant relief from the automatic stay." *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 410 (Bankr. D.S.C. 2011) (citing *Robbins*, 964 F.2d at 345).

7

I.   **Cause Pursuant to 11 U.S.C. § 362(d)(1)**

Movants argue they should be allowed to continue with the lawsuit in Virginia and to make a claim for payment to the Recovery Fund. The Recovery Fund is created as part of the Recovery Act and provides relief to eligible consumers (e.g., those with unsatisfied judgments and meet the statutory requirements) who have incurred losses through the improper or dishonest conduct of a licensed real estate salesperson, broker, or firm.[4]

The underlying claim Movants wish to litigate is a disputed breach of contract claim that will be discharged in this case. The only reason to continue with that litigation to establish any claim—and the only factor that may distinguish Movants' claim from any other claim in this bankruptcy case that was also stayed and will be discharged—is the allegation that a third party fund is available for payment. The third party fund is Movants' cause for relief from the automatic stay. Mitchell argues, and the Court agrees, that on these facts the Court must first determine whether Movants' cause for relief has sufficient merit.

In *Int'l Bus. Machs. v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, the Seventh Circuit adopted a three-part balancing test for determining whether to lift the automatic stay to allow the continuation of litigation. 938 F.2d 731, 735 (7th Cir. 1991). Under this test, the court should consider whether:

> a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
> b) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor, and
> c) the creditor has a probability of prevailing on the merits.

---

[4] *See* Va. Code Ann. § 54.1-2114; *see also* Va. Dept. of Prof. & Occupational Regulation, *Real Estate Transaction Recovery Fund*, http://www.dpor.virginia.gov/Boards/Real_Estate_Recovery_Fund/.

*Id.* (citations omitted); *see also In re Archdiocese of Milwaukee*, 511 B.R. 551, 553 (Bankr. E.D. Wis. 2014) ("The leading case on lifting the stay to permit the continuation of litigation is *In re Fernstrom*[.]").

> [There is] one factor that can be dispositive in determining whether a party can successfully move for relief from the automatic stay under § 362(d)(1) —namely, the likelihood that the movant would prevail in the litigation if the stay were lifted. This factor appears in one commonly employed test for assessing motions to lift a stay under § 362(d)(1).

*In re Gindi*, 642 F.3d 865, 872 (10th Cir. 2011) *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011); *see also Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 34 (1st Cir. 1994) (on a motion for relief from stay, the court looks at whether the proposed claim is colorable, or sufficiently plausible, to support relief from stay); *In re Veal*, 450 B.R. 897, 914–15 (9th Cir. BAP 2011) (the party seeking stay relief must have a colorable claim); *In re Jefferson Cty., Ala.*, 484 B.R. 427, 466 (Bankr. N.D. Ala. 2012) ("although the weight afforded to each of the three factors varies based on the circumstances of each case, a creditor must have a probability of prevailing on the merits in order for the automatic stay to be lifted to pursue litigation in a non-bankruptcy forum").

For a claim to be eligible for payment by the Recovery Fund:[5]

A. **The claimant shall not himself be** (i) a regulant, (ii) the personal representative of a regulant, (iii) the spouse or child of the regulant against whom the judgment was awarded or the personal representative of such spouse or child, or (iv) a lending or financial institution or ***any person whose business involves the construction or development of real property***.[6]

B. Whenever any person is awarded a final judgment in any court of competent jurisdiction in the Commonwealth of Virginia against any

---

[5] The Recovery Act was amended on July 1, 2015, and the parties dispute which version is applicable to this matter. Regardless, both versions include the requirements discussed herein.
[6] Former Va. Code Ann. § 54.1-2114.B.4 (2012).

9

>   individual or entity *for improper or dishonest conduct* as defined in the act, and the improper or dishonest conduct occurred during a period when the individual or entity was a regulant and occurred in connection with a transaction involving the sale, lease, or management of real property by the regulant *acting in the capacity of a real estate broker or real estate salesperson and not in the capacity of a principal,* or on his own account, the person to whom such judgment was awarded may file a verified claim with the Director for a directive ordering payment from the fund of the amount unpaid upon the judgment[.][7]

Va. Code Ann. § 54.1-2114 (2015) (emphasis added). A "claimant" is defined by the Recovery Act as "any person with an unsatisfied judgment against a regulant, who has filed a verified claim under this act." Va. Code Ann. § 54.1-2112. A "regulant" is "a person, partnership, association, corporation, agency, firm or any other entity licensed by the Real Estate Board as a real estate broker or real estate salesperson." *Id.* "Improper and dishonest conduct" is statutorily defined as including "only the wrongful and fraudulent taking or conversion of money, property or other things of value or material misrepresentation or deceit." *Id.*

Movants have failed to persuade the Court that they have any possibility of payment from the Recovery Fund. First, Movants' amended complaint asserts only a cause of action against Mitchell for breach of contract for violating the parties' Partnership Agreement. There is no pending cause of action, evidence, or factual allegations before this Court to show that Movants allege or seek a finding of "wrongful and fraudulent taking or conversion of money, property or other things of value or material misrepresentation or deceit" to constitute "improper and dishonest conduct" in order to have a eligible claim under the Recovery Act.

---

[7] Former Va. Code Ann. § 54.1-2114.A (2012).

10

Second, the weight of the evidence indicates that Movants are not consumers, but rather were in business with Mitchell. Mitchell testified that he and Movants were involved in an LLC whose business was to purchase, renovate, and sell real property. The Partnership Agreement supports this testimony. From this record, it is more likely than not that Movants are not proper claimants under the Recovery Act. Case law interpreting a similar Virginia statute is also instructive, finding that such a fund is intended to protect consumers and not commercial interests. *See Jeffries v. Va. Bd. for Contractors*, 38 Va. Cir. 251 (1995) (interpreting language in a similar statute, the Virginia Contractor Transaction Recovery Act, Va. Code Ann. 54.1-118 *et seq.*, which does not allow recovery by those who are in a business involving the construction or development of real property because in general, the statute is intended to protect consumers, not commercial interests); *see also* Va. Dept. of Prof. & Occupational Regulation, *Real Estate Transaction Recovery Fund*, http://www.dpor.virginia.gov/Boards/Real_Estate_Recovery_Fund/ (stating that the Recovery Fund provides relief to eligible consumers).

Third, the evidence indicates that Mitchell did not act "in the capacity of a real estate broker or real estate salesperson and not in the capacity of a principal." Mitchell's uncontroverted testimony indicates that he acted as both a realtor **and** a principal regarding the transaction in question, and was involved as a principal of the LLC in the purchase and renovation of the property prior to the sale. The only evidence before the Court leads to a conclusion that Mitchell was acting in part in his capacity as a principal of the LLC.

Neither of the Movants were present at the preliminary hearing or the final hearing to contradict Mitchell's testimony or to present convincing evidence to indicate they have any interest covered by the Recovery Act that will result in a claim payable by the Recovery

Fund. Weighing the evidence available to the Court to determine whether cause exists to allow proceedings in Virginia to continue, Movants have failed to show how they could be considered proper claimants under the Recovery Act. Accordingly, lifting the stay to allow Movants to take the first step to proceed with the Virginia action is futile.[8]

## II. RELIEF FROM STAY TO LITIGATE IN ANOTHER FORUM

Movants assert that the Court should consider the factors set forth in *Robbins* when considering the requested relief. "Numerous courts have developed tests to determine when relief from stay to commence or continue litigation in another forum is appropriate." *In re Salinas*, C/A No. 06-01150-DD, slip op. at 4 (Bankr. D.S.C. Aug. 7, 2006). While exercising their discretion to determine if "cause" is present to lift the stay, courts "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Robbins*, 964 F.2d at 345. In applying this balancing test, the Court considers the following factors:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there will be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Id.* (citations omitted); *see also In re Charleston Affordable Housing, Inc.,* C/A No. 09-01020-dd, slip op. at 4–5 (Bankr. D.S.C. June 9, 2009) (focusing on "whether judicial economy will be served by returning the parties to state court or whether litigation in the bankruptcy court would impair progress" in the bankruptcy case).

---

[8] Weighing the remaining *Fernstrom* factors regarding hardship and prejudice to the parties is unnecessary, as the lack of prevailing on the merits can be dispositive. *See Gindi*, 642 F.3d at 872.

Lifting the stay to pursue litigation in another forum has been found appropriate when the party requesting relief seeks to continue a personal injury action against the debtor as a nominal defendant and asks that the stay be lifted to the extent insurance proceeds are available under an applicable liability policy, *see e.g., Elliott v. Hardison*, 25 B.R. 305, 308 (E.D. Va. 1982), to continue equitable distribution in a family court matter where the state courts have special expertise on the subject matter, *see e.g., Robbins*, 964 F.2d at 345, and if the stayed non-bankruptcy litigation has reached an advanced stage and it would cause hardship to begin litigation in another forum, *see e.g., Fernstrom*, 938 F.2d at 737.

A. RELIEF TO CONTINUE LITIGATION OF THE BREACH OF CONTRACT CLAIM IN VIRGINIA

Consideration of the *Robbins* factors does not tip the scales in favor of Movants' request for relief to continue with the breach of contract litigation in Virginia. Therefore, the request is denied.

    *1. Do the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary?*

The majority of debts considered and determined by bankruptcy courts involve the application of state law. One of the primary purposes of this Court is to determine the validity and enforceability of claims against debtors and whether such claims are of the type that may be pursued despite the automatic stay or beyond discharge. Unlike litigation involving state law equitable distribution or personal injury actions, litigation of Mitchell's liability in a breach of contract action is within the bounds of the bankruptcy court's expertise and purpose regardless of which state's law is applied. Analysis of this factor does not sway the Court in Movants' direction.

> ***2. Will modifying the stay promote judicial economy and will there be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court?***

This Court could make the initial determination of whether Mitchell owes any debt to Movants along with the nature of such debt. Disputes in this Court proceed quickly and efficiently. Nothing in the record indicates that the Virginia litigation has progressed to a point that would cause hardship if it recommenced here. There is also no reason to believe that such a determination would interfere with this bankruptcy case in any way. Movants have shown no greater judicial economy that would result from lifting the stay to litigate the breach of contract action in the Virginia state court than litigating it in this Court.

> ***3. Will the estate be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court?***

Enforcement of any judgment through the bankruptcy court is not an issue because Movants do not seek to enforce a judgment against Mitchell or this estate.

    B.   <u>Relief to Submit a Claim for Payment from the Recovery Fund</u>

Should a debt be established in any forum *that meets the criteria for reimbursement from the Recovery Fund*, there is no dispute that: Movants' only available remedy to pursue payment from that Recovery Fund is by submitting a claim thereto; the estate will not be harmed; judicial economy will be served; and this Court's expertise will not be necessary. If this dispute were to reach that stage, relief from stay should be granted to submit a claim for payment from the Recovery Fund. However, no relief from stay is due at this point in time because, as discussed above, Movants failed to properly support their request for relief with evidence indicating that the debt in question is within the scope of claims eligible for

14

payment from the Recovery Fund.  Should such a debt be established, Movants may renew their request at the appropriate time.

**IT IS, THEREFORE, ORDERED** that Movants' Motion for relief from the automatic stay is **DENIED**.

**FILED BY THE COURT**
**02/25/2016**



US Bankruptcy Judge
District of South Carolina

Entered: 02/26/2016